UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RACHEL A. NASANOFSKY, Individually, And As Administrator of the Estate of DAVID H. NASANOFSKY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Civil Action No. 05-10230-WGY |

## JOINT PRETRIAL MEMORANDUM

Plaintiff, Rachel A. Nasanofsky and defendant United States of America submit this joint pretrial memorandum in accordance with the Court's Order of May 2, 2007 and Local Rule 16.5.

1. **Concise Summary of the Evidence**

    A. **Plaintiff**

    Plaintiff expects the evidence to show that in July of 2002 David Nasanofsky was a 52 year old married man, the father of three children, who lived in Randolph, Massachusetts. He was employed as an engineer, earning approximately $73,000 per year. Mr. Nasanofsky was a supportive husband and father. Beginning in March 1992, Mr. Nasanofsky regularly sought preventative and episodic medical care from Dr. Frederick Dolgin, his primary care physician at Manet Community Health Center, Inc. in Quincy, Massachusetts.

    As early as May, 1992, Dr. Dolgin noted his treatment of Mr. Nasanofsky's labile hypertension, high cholesterol levels, history of tobacco use and sedentary lifestyle. Also noted was a family history of coronary artery disease, including his father's first myocardial infarction at age 55

followed by successful coronary artery bypass surgery. In October, 1993, Dr. Dolgin documented that he discussed cardiac risk factors with Mr. Nasanofsky and ordered prophylactic Ecotrin or baby aspirin. At an appointment in June, 1998 for a complete physical exam, Dr. Dolgin noted a slight weight gain and discussed low cholesterol diet along with checking the patient's cardiac risk profile. A few weeks later, after reviewing the cholesterol level, Dr. Dolgin prescribed Lipitor. In December, 2000, Mr. Nasanofsky presented to Dr. Dolgin's office with symptoms of an upper respiratory infection. He reported that he had quit smoking five months earlier. His blood pressure was 160/110 – 160/100. Hydrochlorothiazide was prescribed for the high blood pressure and an appointment was made to follow-up in one month. At the follow-up visit on January 26, 2001, the patient's blood pressure was recorded as 140/90.

On August 8, 2001, Mr. Nasanofsky reported for a complete physical exam. His blood pressure that day was 160-162/102-110. Dr. Dolgin started him on Univasc in place of the Hydrochlorothiazide, which the patient reported he had stopped due to the side effect of urinary frequency. In the office on September 14, 2001 for a blood pressure check, it was 140 to 162 over 90 to 92. The Univasc was increased from 10 to 15 mg every day and Mr. Nasanofsky was instructed to increase his exercise, with a follow-up appointment in six months. On March 27, 2002, Mr. Nasanofsky's blood pressure was documented as 144 to 150 over 84 to 92. Atenolol was added to his anti-hypertensive medication regimen.

On the morning of July 24, 2002, Mr. Nasanofsky, presented to Dr. Dolgin's office with several complaints including fever, cough of two days duration and mid-sternal chest pain for three days that felt "like someone standing on chest" and was accompanied by nausea. Mr. Nasanofsky indicated that his pain was rated as '4' on a scale of 1-10, as indicated in the note recorded by the

office nurse when recording current complaints.

The patient had a heart rate of 88 beats per minute and irregular. His blood pressure was 80/50 in the right arm and 88/50 in the left arm. Dr. Dolgin recorded that the patient had been awakened at 3:00 AM with cough after having experienced seven days of sweats and chills. Examination revealed rales and wheezes in the lungs but no cyanosis or edema. There was no mention of a cardiac examination. An electrocardiogram was interpreted by Dr. Dolgin as normal sinus rhythm. Oxygen saturation on room air was 93%. Dr. Dolgin's assessment was "probable pneumonia." He prescribed inhaled and oral steroids, an antibiotic and ordered a complete blood count, blood cultures and a chest x-ray, but made no reference to the results of the tests. Dr. Dolgin's x-ray requisition read "RML pneumonia."

The chest x-ray was performed later that day at Quincy Medical Center and interpreted that evening with findings of alveolar infiltrates superimposed on bilateral interstitial prominent lung markings which could represent fibrosis with superimposed right pneumonia. Plaintiff's experts are expected to testify that the film was consistent with pulmonary edema most likely of cardiac origin. Further, had the requisition for the chest x-ray filled out by Dr. Dolgin been ordered as a STAT or urgent study and to include ruling out cardiac etiology and/or congestive heart failure, it to be expected that, consistent with the standard of care, the film would have been interpreted by Dr. Yung as diagnostic of heart failure.

At approximately 6:45 PM that evening, Mr. Nasanofsky collapsed in his home. His children called 911 and Town of Randolph Emergency Medical Services responded. Upon arrival, the EMS team found Mr. Nasanofsky on the floor, in severe respiratory distress. His cough appeared to be producing vomitus and he was unable to speak in full sentences. Placed on nasal oxygen at 1.5 liter

per minute, he quickly became apneic. An oral airway was placed and ventilatory support was initiated. An attempt to intubate was unsuccessful. On ECG, a cardiac rhythm was present; however, there was no evidence of pulse or blood pressure. PEA (pulseless electrical activity) deteriorated to asystole. Resuscitation efforts, begun at the scene, continued in the ambulance to Milton Hospital and in the Emergency Room for another ten minutes without success. Mr. Nasanofsky was pronounced dead at 7:45 PM on July 24, 2002.

Mr. Nasanofsky's children were present at the time he collapsed and will testify to their observations of his pain and suffering.

An autopsy performed the next day revealed an acute myocardial infarction extensively involving the left ventricle wall secondary to occlusive thrombus and intraplaque hemorrhage in the mid left circumflex artery. The posterior papillary muscle, which supports the mitral valve, had ruptured and there was subacute epicarditis over the posterior left ventricle. The area of the infarct and the papillary muscle was necrotic with infiltration of neutrophils, congestion and edema. These findings indicate that the infarct was already well established and did not occur at the time of the collapse on the evening of July 24th.

Mr. Nasanofsky had a close relationship with his wife and children, who have suffered significant emotional and economic damages since his death.

Plaintiff's expert witnesses will opine consistent with their expert reports, which are attached to this memoranda as exhibit A.

B.   **Defendant**

Defendant intends to show through expert testimony, autopsy records, and Mr. Nasanofsky's family members' testimony, that Mr. Nasanofsky suffered a significant myocardial

infarction ("MI") several days before he presented to the Manet Community Health Center, Inc. in Quincy, Massachusetts ("Health Center"), in a hemodynamically stable condition. Defendant will further show that the MI suffered several days earlier caused irreversible damage to Mr. Nasanofsky's heart, and that as a consequence Mr. Nasanofsky suffered complete rupture of his posterior papillary muscle of the mitral valve several hours after he presented to the Health Center. Defendant will show that this complete rupture of the papillary muscle was severe, instantaneous, and immediately fatal, and also undetectable and not effectively treatable under the circumstances.

Defendant will also show through expert testimony, autopsy records, and Mr. Nasanofsky's medical records, that because of Mr. Nasanofsky's cumulative heart disease and his MI, any chance of surviving the complete rupture of his papillary muscle was extremely low, and that any such survival would have (1) been accompanied by significant congestive heart failure symptoms, (2) prevented him from returning to work, and (3) reduced his life expectancy to only months or a few more years.

2.  **Statement of the Facts Established by the Pleadings, Stipulations of Counsel, and Admissions**

The plaintiff and defendant are currently working on determining whether any agreement can be reached as to stipulated facts. The only current stipulations are:

A.  David Nasanofsky was pronounced dead at or around 7:45 p.m. on July 24, 2002.

B.  The plaintiff Rachel Nasanofsky is the duly appointed Administratrix of the Estate of David Nasanofsky.

3.   **Contested Issues of Fact**

The parties contest whether the treatment and care the defendant rendered to the plaintiff's decedent, Mr. Nasanofsky, on July 24, 2002, was negligent and whether the defendant complied with the applicable standards of care. The parties contest the proximate cause of Mr. Nasanofsky's death and whether the treatment and care rendered by the defendant was related to the proximate cause of Mr. Nasanofsky's death. The parties also contest the amount of the plaintiff's damages.

4.   **Jurisdictional Issues**

The parties are not aware of any jurisdictional issues that need to be addressed by the Court at this time.

5.   **Questions Raised by Pending Motions**

There are no motions currently pending before this Court.

6.   **Issues of Law Including Evidentiary Questions Together with Supporting Authority**

None that the parties are aware of at this time.

7.   **Requested Amendments to the Pleadings**

The parties do not request any amendments to the pleadings at this time.

8.   **Additional Matters to Aid in the Disposition of the Action**

If plaintiff's expert radiologist is unavailable to attend trial plaintiff intends to take his audiovisual deposition and present his testimony via video at trial. The defendant assents to this.

9.   **The Probable Length of the Trial**

The parties anticipate that the trial will last approximately five days.

10. **Names and Addresses of Witnesses who Shall Testify at the Trial and the Purpose of the Testimony of Each Witness**

    A.    **Plaintiff's Fact Witnesses**

        1.    Rachel A. Nasanofsky
              70 Pine Avenue
              Randolph MA 02368

        2.    Amy Nasanofsky
              70 Pine Avenue
              Randolph MA 02368

        3.    Allan Nasanofsky
              70 Pine Avenue
              Randolph MA 02368

        4.    Suzanne Nasanofsky Brough
              27 Turcotte St.
              Attleboro, MA 02703

        5.    Babbington Yung, M.D.

        6.    Dr. Frederick Dolgin

        7.    Carol Blowers, RN

        8.    B. Daniels
              Randolph EMS

        9.    P. Joyce
              Randolph EMS

        10.    B. Rennie
              Randolph EMS

        11.    I. LaBelle
              Randolph EMS

        12.    P. Cox
              Randolph EMS

13. Jon L. Keller, M.D.
    Milton Hospital

14. Keeper of Records
    Health Star, Inc.

15. Medical Care Providers for David Nasanofsky
    Manet Community Health Center

16. Keepers of Records
    Manet Community Health Center

17. Medical Care Providers for David Nasanofsky
    Quincy Medical Center

18. Timothy C. Adams
    Quincy Medical Center

19. Keepers of Records
    Quincy Medical Center

20. Medical Care Providers for David Nasanofsky
    Milton Hospital

21. Keepers of Records
    Milton Hospital

22. Keepers of Records
    Randolph EMS

**B.   Plaintiff's Medical Witnesses**

1. Babbington Yung, M.D.

**C.   Plaintiff's Expert Witnesses**

1. Alvin S. Blaustein, MD
   Veteran's Administration Medical Center
   Houston TX

2. Jerry Blaine, MD
   Lahey Clinic Medical Center
   Burlington MA

    3.    J. Robert Kirkwood, MD
           89 Normandy Drive
           Longmeadow MA

    4.    Dana Hewins, PhD
           1 Tammett Brook Park
           Lakeville MA

The plaintiff reserves the right to call any witnesses identified by the defendant.

**D.   Defendant's Fact Witnesses**

The Defendant reserves the right to call any witnesses identified by the defendant.

**E.   Defendant's Medical Witnesses**

The Defendant reserves the right to call any witnesses identified by the defendant.

**F.   Defendant's Expert Witnesses**

    1.    Joseph M. Weinstein, M.D.
           Bridgewater Goddard Park Medical Associates
           110 Liberty Street
           Suite 2C
           Brockton, MA  02301

The Defendant reserves the right to call any witnesses identified by the defendant.

**11.   Proposed Exhibits**

    **A.   Uncontested Exhibits of the Parties**

1. Medical Records from Manet Community Health Center;
2. Medical Records from Quincy Medical Center;
3. Medical Records from Milton Hospital (including autopsy report);
4. Medical Records from Randolph EMS;
5. David Nasanofsky's Death Certificate
6. Funeral and burial records from Levine-Briss Funeral Home
7. Records from the Probate Court related to the Estate of David Nasanofsky, including the Appointment of Administratrix of Estate of David H Nasanofsky on June 18, 2003, Norfolk County Probate Docket No. 02P2636AD
8. Employment records of David Nasanofsky from Health Star, Inc.

9. David Nasanofsky's Earning Statements from Health Star, Inc.
10. David Nasanofsky's Tax Records
11. David Nasanofsky's Diplomas and Certificates
12. Exhibits from the Deposition of Frederick Dolgin, MD
13. Exhibits from the Deposition of Babington Yung, MD
14. Exhibits from the Deposition of Carol Blowers, RN
15. Exhibits from the Deposition of Quincy Medical Center
16. Frederick Dolgin's Answers to Interrogatories

**B.   Contested Exhibits**

None that the parties are aware of at this time.

Respectfully submitted,

| For the Plaintiff, | For the Defendant, |
|---|---|
| RACHEL A. NASANOFSKY, Individually, And As Administrator of the Estate of DAVID H. NASANOFSKY, | UNITED STATES OF AMERICA<br><br>MICHAEL J. SULLIVAN<br>United States Attorney |
| /s/Scott M. Heidorn<br>Clyde D. Bergstresser (BBO# 039200)<br>Scott Heidorn (BBO# 661787)<br>Russell X Pollock (BBO# 564883)<br>Campbell Campbell Edwards & Conroy<br>One Constitution Plazza<br>Boston, MA 02129<br>617-241-3000 (Voice) | By:  /s/Anton P. Giedt<br>Anton P. Giedt<br>Assistant U.S. Attorney<br>1 Courthouse Way<br>Boston, MA 02210<br>617-748-3309 (Voice)<br>617-748-3967 (Fax)<br>anton.giedt@usdoj.gov |

---

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                 Boston,
                    Massachusetts
                                                                                    DATE:

I, Scott Heidorn, do hereby certify that I have this day served a copy of the foregoing upon counsel of record in this action through Electronic Filing.

/s/Scott M. Heidorn
Scott M. Heidorn

---